IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES WILLIAM REEVES III,

　　　　　Plaintiff,

vs.　　　　　　　　　　　　　　　Case No. 10-4136-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

　　　　　Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

     The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993).   At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy.  Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner
meets this burden if the decision is supported by substantial
evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On May 27, 2010, administrative law judge (ALJ) George M.
Bock issued his decision (R. at 13-23).  Plaintiff alleges that
he has been disabled since August 1, 2006 (R. at 13).  Plaintiff
is insured for disability insurance benefits through June 30,
2009 (R. at 15).  At step one, the ALJ found that plaintiff has
not engaged in substantial gainful activity since his alleged
onset date (R. at 15).  At step two, the ALJ found that plaintiff
had the following severe impairments: type 1 diabetes mellitus

with diabetic neuropathy, and degenerative disc disease (DDD) of
the spine (old compression fracture and mild osteoarthritis) (R.
at 15).  At step three, the ALJ determined that plaintiff's
impairments do not meet or equal a listed impairment (R. at 18).
After determining plaintiff's RFC (R. at 18), the ALJ found at
step four that plaintiff is unable to perform past relevant work
(R. at 22).  At step five, the ALJ found that plaintiff could
perform other jobs that exist in significant numbers in the
national economy (R. at 22-23).  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 23).

**III.  Did the ALJ err in his consideration of the opinions of Dr.
Harris?**

    The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight than the views of consulting
physicians or those who only review the medical records and never
examine the claimant.  The opinion of an examining physician is
generally entitled to less weight than that of a treating
physician, and the opinion of an agency physician who has never
seen the claimant is entitled to the least weight of all.
Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When
a treating source opinion is inconsistent with the other medical
evidence, the ALJ's task is to examine the other medical source's
reports to see if they outweigh the treating source's reports,

5

not the other way around.   Treating source opinions are given
particular weight because of their unique perspective to the
medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultive examinations.   If an ALJ intends
to rely on a nontreating physician or examiner's opinion, he must
explain the weight he is giving to it.   Hamlin v. Barnhart, 365
F.3d 1208, 1215 (10th Cir. 2004).   The ALJ must provide a legally
sufficient explanation for rejecting the opinion of treating
medical sources in favor of non-examining or consulting medical
sources.   Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.   Castellano v. Secretary of
Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).   When a treating
physician opinion is not given controlling weight, the ALJ must
nonetheless specify what lesser weight he assigned the treating
physician opinion.   Robinson v. Barnhart, 366 F.3d 1078, 1083
(10th Cir. 2004).   A treating source opinion not entitled to
controlling weight is still entitled to deference and must be
weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

Dr. Harris (a/k/a Dr. Bremby) was plaintiff's treating

physician.  In his decision, the ALJ stated the following

regarding the opinions of Dr. Harris:

> The undersigned has considered the medical
> source statements from the claimant's
> treating physician at Marian Clinic, April H.
> Bremby, D.O. (a/k/a, April L. Harris, D.O.)
> (Exhibits 4F, 16F). The undersigned accepts
> Dr. Harris's opinion that the claimant is
> limited to standing and/or walking for 2
> hours total in an 8-hour workday, but does
> not accept Dr. Harris's opinion that the
> claimant has sitting limitations at less than
> the sedentary level ("about 4 hours"). Dr.
> Harris's own treatment records do not support
> such a limitation in sitting, a limitation
> that that the claimant needs to elevate his
> legs, or that the claimant needs to lie down
> at unpredictable intervals during a work
> shift. The claimant does not complain of

> fatigue or back pain, just pain in his legs,
> feet and arms. There is no basis in the
> record of evidence for any sitting
> limitations, a medical need to lie down, or a
> medical need for the option to sit or stand
> at will. Dr. Harris's opinion that she
> anticipates that the claimant would be absent
> from work more than three times a month due
> to his impairments or treatment is also not
> supported by her own treatment records or
> any other substantial evidence in the record.
> Accordingly, based on all the above, the
> undersigned gives little weight to Dr.
> Harris's opinions, other than her opinions
> with respect to the claimant's standing
> and/or walking limitation and his lifting
> and/or carrying limitation.

(R. at 21).  The ALJ instead gave "substantial" weight to the

opinions of the state agency medical consultant because the ALJ

found that those opinions were consistent with the medical

records (R. at 22).

The court will first examine the ALJ's finding that the

"claimant does not complain of fatigue or back pain, just pain in

his legs, feet and arms" (R. at 21).  Defendant argues that it is

apparent that the ALJ meant that plaintiff did not complain of

those symptoms "to Dr. Harris" during the course of treatment

(Doc. 13 at 20).  However, the ALJ did not limit his statement by

indicating that plaintiff did not complain of fatigue or back

pain to Dr. Harris.  Furthermore, the paragraph containing this

statement references not only the treatment records of Dr.

Harris, but also the "record of evidence" in the following

sentence, and later, "other substantial evidence in the record"

(R. at 21).   The court finds that defendant's attempt to limit the scope of the statement to complaints made by the plaintiff to Dr. Harris is not supported by the language of the ALJ's decision.   In the absence of any evidence to the contrary, the court finds that the more reasonable construction is that the ALJ meant what he said when he indicated that the plaintiff did not complain of fatigue or back pain.   The question is then whether the record supports this assertion.

Dr. Harris made a medical finding on October 17, 2008 that plaintiff suffered from "extraordinary fatigue" (R. at 248).   Dr. Duncan, in his consultative evaluation on October 18, 2008 stated that the patient reported "a nine year history of lumbosacral back pain" (R. at 265).   Dr. McKenna, a licensed psychologist who performed a behavioral health examination of the plaintiff, reported on October 22, 2008 that plaintiff reported that he often felt "tired and fatigued" (R. at 269).   The record also contains a statement by the plaintiff that he suffered from "back problems" (R. at 177), a statement by the plaintiff that he has to spend most of his day reclining with his legs elevated because of pain that keeps him awake, causing "fatigue" (R. at 191), a statement that he feels "fatigued and weak" (R. at 197), and that he suffers from "fatigue" (R. at 199).   Finally, an emergency room record dated October 1, 2007 indicates that plaintiff's complaint is "back pain" (R. at 220).   Thus, the record is

9

replete with reports from medical sources and from plaintiff himself that he suffers from back pain and fatigue.[1]  For this reason, the court finds that the ALJ's assertion that plaintiff did not complain of fatigue or back pain is clearly without merit.  Because this assertion erroneously served as one the bases for discounting the opinions of Dr. Harris, this case will need to be remanded in order for the ALJ to consider the clear evidence that plaintiff repeatedly complained of fatigue and back pain.  The court cannot speculate on whether the ALJ would have reached the same conclusion regarding the weight he accorded to the opinions of Dr. Harris in the absence of his erroneous statement that plaintiff did not complain of fatigue or back pain.  See Coleman v. Astrue, 2010 WL 4942103 at *6 (D. Kan. Nov. 30, 2010); Dickson v. Commissioner of Social Security, 2009 WL 3075655 at *4 (W.D. Okla. Sept. 22, 2009).

Second, the ALJ stated that there "is no basis in the record of evidence for any sitting limitations, a medical need to lie down, or a medical need for the option to sit or stand at will" (R. at 21).  However, Dr. Harris, in support of these and other limitations,[2] stated that they were supported by the following

---

[1]  The court would further note that the ALJ found that plaintiff had a severe impairment of degenerative disc disease of the spine (R. at 15).

[2]Dr. Harris limited plaintiff so sitting for 4 hours a day, a need to shift at will from sitting to standing/walking, and that plaintiff would need to lie down at unpredictable times

medical findings: neuropathy with leg and foot pain, poor
circulation, swelling in legs, and extraordinary fatigue (R. at
248).  Thus, contrary to the ALJ's assertion that there is no
basis in the record to support these limitations, Dr. Harris
specifically set forth medical findings which, in his opinion,
supported these limitations.  Later, the ALJ noted that the state
agency assessment stated that objective evidence did not fully
support all the restrictions set forth by Dr. Harris (R. at 22,
277).  However, the ALJ erred by asserting that there is "no"
basis in the record to support these limitations.  When
conflicting medical opinion evidence exists, the conflict must be
noted, and the ALJ must provide a reasonable explanation for
giving greater weight to the opinion of a nonexamining medical
source as compared to the opinion of a treating source.

Third, the ALJ stated that the treatment records from Dr.
Harris do not support certain physical limitations (R. at 21).
However, the ALJ erred by stating this in conclusory fashion,
without any explanation of why the ALJ found that the treatment
records do not support these limitations.  If the treatment
records do not support, or are inconsistent with the limitations
set forth by Dr. Harris, the ALJ should identify what in the
treatment records do not support or are inconsistent with the
limitations set forth by Dr. Harris.  Krauser v. Astrue, 638 F.3d

during a work shift (R. at 247-248).

1324, 1331 (10th Cir. 2011); <u>Hamlin v. Barnhart</u>, 365 F.3d 1208,
1217 (10th Cir. 2004).

For the reasons set forth above, the court finds that
substantial evidence does not support the ALJ's decision to give
little weight to some of the limitations set forth by Dr. Harris.
This case shall therefore be remanded in order for the ALJ to
give proper consideration to the opinions of Dr. Harris, as set
forth above.  On remand, the ALJ should consider whether or not
to recontact Dr. Harris if the ALJ is unable to ascertain the
basis for his opinions, in accordance with the case law and
regulations and rulings of the agency.<sup>3</sup>

---

<sup>3</sup>In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078 (10th
Cir. 2004), the court held as follows:

> If evidence from the claimant's treating
> doctor is inadequate to determine if the
> claimant is disabled, an ALJ is required to
> recontact a medical source, including a
> treating physician, to determine if
> additional needed information is readily
> available. See 20 C.F.R. §§ 404.1512(e)(1)
> and 416.912(e)(1) ("We will seek additional
> evidence or clarification from your medical
> source when the report from your medical
> source contains a conflict or ambiguity that
> must be resolved, the report does not contain
> all the necessary information, or does not
> appear to be based on medically acceptable
> clinical and laboratory diagnostic
> techniques."); <u>see also McGoffin</u>, 288 F.3d at
> 1252 (holding ALJ had obligation to recontact
> treating physician if validity of his report
> open to question). The responsibility to see
> that this duty is fulfilled belongs entirely
> to the ALJ; it is not part of the claimant's
> burden. <u>White v. Barnhart</u>, 287 F.3d 903, 908

**IV.  Did the ALJ err in his consideration of the opinions or reports from other medical sources?**

The record also contains consultative examinations by Dr. Fajardo (R. at 241-244) and Dr. Duncan (R. at 263-266).  The ALJ discussed their reports, and stated that his findings were supported by their examinations (R. at 21).  Plaintiff argues that the ALJ erred by not indicating what weight he provided to their opinions (Doc. 10 at 26-27).

The court finds no error by the ALJ in his consideration of the opinions of these two consultants.  The ALJ discussed their reports.  Neither consultant offered any opinions regarding

---

(10th Cir.2001).

366 F.3d at 1084.  The court in <u>Robinson</u> then stated that if the ALJ concluded that the treatment provider failed to provide sufficient support for his conclusions about plaintiff's limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medication on her ability to work, the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it.  366 F.3d at 1084.  In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.

whether or not plaintiff had any physical or mental limitations, and the plaintiff does not point to anything in either report that conflicts with the ALJ's findings.

Plaintiff also alleges error by the ALJ in the weight the ALJ accorded to the opinions set forth in the state agency assessment (Doc. 10 at 27).  In light of the errors by the ALJ in his consideration of the opinions of Dr. Harris, on remand, the ALJ will need to reexamine the weight to be accorded to the opinions in the state agency assessment after giving proper consideration to the opinions of Dr. Harris, as set forth above. Also, as previously set forth, the ALJ must provide a reasonable explanation if he gives greater weight to the opinion of a nonexamining medical source as compared to the opinion of a treating source.

**V.  Did the ALJ err in his credibility and RFC findings?**

Plaintiff also asserts error by the ALJ in his credibility and RFC findings (Doc. 10 at 27-33).  The court will not reach these issues because they may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, the court will address the ALJ's failure to discuss a third party statement by plaintiff's mother (R. at 168-175). The ALJ should consider this statement in accordance with Blea v.

14

Barnhart, 466 F.3d 903 (10th Cir. 2006).  In Blea, the ALJ failed
to discuss or consider the lay testimony of the claimant's wife;
the ALJ's decision failed to mention any of the particulars of
the testimony of claimant's wife, and in fact, never even
mentioned the fact that she did testify regarding the nature and
severity of her husband's impairments.  The court held as
follows:

> In actuality, the ALJ is not required to make
> specific written findings of credibility only
> if "the written decision reflects that the
> ALJ considered the testimony." Adams, 93 F.3d
> at 715. "[I]n addition to discussing the
> evidence supporting his decision, the ALJ
> also must discuss the uncontroverted evidence
> he chooses not to rely upon, as well as
> significantly probative evidence he rejects."
> Clifton v. Chater, 79 F.3d 1007, 1009 (10th
> Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's
> testimony, nor did he refer to the substance
> of her testimony anywhere in the written
> decision. Thus, it is not at all "clear that
> the ALJ considered [Mrs. Blea's] testimony in
> making his decision." Adams, 93 F.3d at 715.
> Additionally, Mrs. Blea's testimony regarding
> her husband's suicidal thoughts is not only
> uncontroverted; it serves to corroborate Dr.
> Padilla's psychiatric examination of Mr.
> Blea, where he stated that Mr. Blea has been
> dysthymic for years. [citation to record
> omitted] Thus, the ALJ's refusal to discuss
> why he rejected her testimony violates our
> court's precedent, and requires remand for
> the ALJ to incorporate Mrs. Blea's testimony
> into his decision. "Without the benefit of
> the ALJ's findings supported by the weighing
> of this relevant evidence, we cannot
> determine whether his conclusion[s] ... [are]
> supported by substantial evidence." Threet,
> 353 F.3d at 1190; see also Baker v. Bowen,

> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to whether
> the ALJ applied the appropriate standard by
> considering all the evidence before him, the
> proper remedy is reversal and remand.").

Blea, 466 F.3d at 915.  According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 25th day of October 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge